In re Stuart

---

IN THE MATTER OF: BLAIR F. STUART

No. 8110SC1429

(Filed 7 December 1982)

1. Administrative Law § 4— revocation of hearing aid license—evidence supporting board's decision

    The evidence before the North Carolina State Hearing Aid Dealers and Fitters Board was sufficient to find that petitioner had violated G.S. § 93D-13(a)(6) by falsifying a document which stated petitioner's audiometer had been calibrated during 1978.

2. Administrative Law § 4— member of fact finding board testifying before hearing

    It was proper for a member of the North Carolina State Hearing Aid Dealers and Fitters Board to testify as to what he found in the petitioner's files, and such testimony did not deny petitioner a fair and impartial hearing.

APPEAL by petitioner from *Cornelius, Judge.* Judgment entered 19 November 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 19 October 1982.

On 23 April 1981 the North Carolina State Hearing Aid Dealers and Fitters Board heard evidence in the matter of Blair F. Stuart, who is a licensed and registered Hearing Aid Dealer

and Fitter. The board made the following pertinent findings of fact:

. . .

2. That the Respondent is a duly licensed and registered Hearing Aid Dealer and Fitter with the Board and has been at all times pertinent to the matters contained in this Judgment.

3. That the Respondent received adequate legal notice of a hearing to be held before the Board on April 23, 1981, at 11:00 AM in the offices of the Attorney General, Justice Building, Raleigh, N.C.

4. That on or about March 17, 1977, Audiovox, Inc., 55 Chapel Street, Newton, Massachusetts, which had previously leased an audiometer to the Respondent, received from the Respondent said audiometer to have said meter calibrated, pursuant to requirements of the Board. That said audiometer was calibrated by representatives of Audiovox, Inc., and said audiometer was returned to Respondent along with an "audiometer calibration chart" dated March 18, 1977. That a copy of said chart was mailed by the Respondent to the Secretary-Treasurer of the Board, pursuant to regulations of the Board.

5. That at [sic] or about April 1, 1978, the Secretary-Treasurer of the Board received from the Respondent an audiometer calibration chart, purportedly prepared by Audiovox, Inc., dated March 18, 1978. That a copy of said calibration chart dated 3-18-78 was introduced into evidence by the Board.

6. That Audiovox, Inc., did not calibrate any audiometer for the Respondent during calendar year 1978, and said calibration chart dated 3-18-78, mailed by the Respondent to the Board during calendar year 1978, was an altered document, the date "3-18-78" having been changed by the Respondent, or at his direction, by an employee of the Respondent from the date "3-18-77" to "3-18-78".

Based on these findings the board made the legal conclusion that Stuart, by willfully mailing, or causing to be mailed to the board,

a calibration chart which had been altered by him or at his direction, made a false representation to the board and "willfully deceived the board in violation of G.S. 93D-13(a)(6)." As a result, the board revoked Stuart's license.

Stuart petitioned for judicial review pursuant to North Carolina General Statute Chapter 150A, Article 4. The Superior Court affirmed the decision of the board. Petitioner appealed.

*Attorney General Rufus L. Edmisten, by Deputy Attorney General Millard R. Rich, Jr. for the North Carolina Hearing Aid Dealers and Fitters Board.*

*Yeargan, Thompson & Mitchiner, by W. Hugh Thompson for the petitioner, appellant.*

HEDRICK, Judge.

[1] After giving petitioner adequate legal notice, the North Carolina Hearing Aid Dealers and Fitters Board conducted a hearing on 23 April 1981 to determine if petitioner Stuart had violated G.S. § 93D-13(a)(6) which reads in pertinent part:

> (a) The Board may in its discretion administer the punishment of private reprimand, suspension of license for a fixed period or revocation of license as the case may warrant in their judgment for any violation of the rules and regulations of the Board or for any of the following causes:
>
> . . .
>
> (6) Conduct involving willful deceit
>
> . . . .

The board heard testimony from a representative of Audiovox, Inc. that no one at Audiovox had calibrated Stuart's audiometer during 1978. A documents expert from the State Bureau of Investigation testified that the calibration charts, dated "3-18-77" and "3-18-78", were identical documents except for the date, and the "3-18-78" document was a photocopy of the "3-18-77" document. Mr. Ray Bedsaul, secretary to the board, testified that both documents were part of Stuart's master file with the board. Petitioner Stuart testified that he had not sent the altered calibration chart to the board, but his secretary had.

In his Assignment of Error Nos. 1-3 based on Exception Nos. 2-10, petitioner argues that the evidence presented was not sufficient to support the board's finding of "conduct involving willful deceit," G.S. § 93D-13(a)(6), because there is no showing that Stuart acted purposely, deliberately or intentionally or even that he himself sent the altered chart to the board. We do not agree and hold that evidence showing the pertinent document in Stuart's file, along with evidence that it had been altered was sufficient to raise the inference that Stuart had acted with "willful deceit."

[2] In his Assignment of Error No. 4, based on Exception Nos. 1, 6 and 10, petitioner contends that the court erred in failing to strike the testimony of Ray Bedsaul because he was a member of the fact finding board when he testified, which petitioner argues denied him a fair and impartial hearing. Bedsaul only testified that the two documents in evidence came from Blair Stuart's master file and that it is a requirement of the board that audiometers be calibrated on an annual basis. In his brief, petitioner fails to specify which clause of the Constitution of North Carolina, Article I, § 19 has been violated nor does he cite any directly applicable case law. As a general rule, an administrative officer may be disqualified from a proceeding

> . . . in which he has prejudged the case, or in which he has a personal or pecuniary interest, where he is related to an interested person within the degree prohibited by statute, or where he is biased, prejudiced, or labors under a personal ill-will toward a party. An interest to disqualify an administrative officer acting in a judicial capacity may be small, but it must be an interest direct, definite, capable of demonstration, not remote, uncertain, contingent, unsubstantial, or merely speculative or theoretical.

1 Am. Jur. 2d *Administrative Law* § 64 (1962). As stated in *Withrow v. Larkin,* 421 U.S. 35 (1975), there is a presumption of honesty and integrity in those serving as adjudicators and the petitioner must demonstrate a risk of bias or prejudgment. This, in our opinion, petitioner has failed to do. Mr. Bedsaul testified only as to what he found in the files and there is no evidence presented by the defendant that Mr. Bedsaul was prejudiced against the petitioner or had any other predisposition which

should have disqualified him from sitting as a member of the ad-judicating board. Therefore, the decision of the board appealed from should be affirmed.

Affirmed.

Judges WEBB and BECTON concur.